## WARNER HINES ET AL. v. JESSE M. SHUMAKER.

### [52 South. 705.]

1. LIBEL. *Letter libelous per se. Insurance company.*

    A letter writen by a local insurance company, acting through its superintendent of agencies, charging the state representative of a foreign insurance company with being "generally dishonest, lacking in brains, undiplomatic, non-optimistic and a mean 'knocker,'" is libelous *per se*, and not excusable because the writer had received information that the person libeled had made statements derogatory of the local company.

2. SAME. *Privileged communication. Publication in excess of privilege.*

    An insurance company's publication of a libelous letter sent to all of its agents and sub-agents is not excusable as a privilege communication as to all of them because privileged as to some of them.

3. SAME. *Same. Occasion privileged. Defamation in excess of occasion.*

    A communication will not be privileged, if the defamatory matter therein exceeds the exigency of the occasion, although the occasion may be privileged.

FROM the circuit court of, first district, Hinds county.

HON. WILEY H. POTTER, Judge.

Shumaker, appellee, was plaintiff in the court below; and Hines and the Lamar Life Insurance Company, appellants, were defendants there. From a judgment in favor of the plaintiff the defendants appealed to the supreme court. The opinion of the court states the facts of the case.

(For decision on motion to strike stenographer's report of the testimony from the record, see *Hines v. Shumaker,* 95 Miss. 477, 50 South. 564.)

*V. Otis Robertson* and *Tim E. Cooper,* for appellants.

A communication is in the privileged class: (1) When the circumstances of the ooccasion casts upon the defendant the duty of making the communication to a certain other person to whom he makes a communication in the *bona fide* performance of such duty; (2) Where the defendant has an interest in the subject-matter of the communication and the person to whom he communicates it has a corresponding interest. Newell on Slander and Libel (2d ed.) 475, 479.

The letter plainly shows that Hines did not intend for any of his subagents to enter into a knocking contest. He intended to make his agents understand that Shumaker could do no damage and that they were to let him alone.

It is too well settled now to be questioned that one who utters a slander is not responsible, either as on a distinct cause of action or by way of aggravation of damages of the original slander, for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control, and who thereby make themselves liable to the person slandered; and that such repetition cannot be considered in law a necessary, natural and probable consequence of the original slander. If there be two distinct and separate publications of the same libel,

a defendant who was concerned in the first publication, but wholly unconnected with the second, would not be liable for any damage which he could prove to be the consequence of the second publication and in no way due to the first. Nor, on the other hand, should the fact that other actions have been brought for other publications of the same libel be taken into consideration by the jury in assessing the damage arising from the publication by the present defendant. Newell on Slander and Libel, 244; *Southern Express Co. v. Fitzner,* 59 Miss. 584.

The sending of the letter to U. E. Cross by Hines was not the publication of Lamar Life Insurance Company. The record does not disclose the date when Hines mailed the letter to Cross. The evidence of Cross is to the effect that the first knowledge he had of the sending of the letter by Hines was during the term of court at which the suit of *Shumaker v. Hines* was being tried. No word of testimony tends to show that Hines was acting in his official capacity when sending out the letter to Cross. Hines stated that it was personal and intended to be private business because of personal and business friendship with Cross. But even if Hines did send the letter to Cross, and in his capacity as superintendent of agents, he had no authority to do so and was acting without the scope of his authority, and so admits. The case of *Southern Express Co. v. Fitzner,* 59 Miss. 484, again applies and so far as the Lamar Life Insurance Company is concerned there was no publication.

The dictation of the letter to the stenographer was not a publication of the libel either by Hines or the Lamar Life Insurance Company. As to the proof offered of publication on the part of the insurance company, by means of dictation to the stenographer, modern conditions, the imperative needs of a new commercial life, have made a stenographer thoroughly conversant with every detail of any office of the slightest pretensions, a necessary and *sine qui non* of that office. Of all confidential

relations, that of a stenographer is the most confidential. No agent or employe is in more direct touch with the very closest secrets of his or her employer's business. Stenographers are part of the machinery of each and every transaction. A stenographer, regularly employed in an office, must know every detail of the business. She is, and should be interested in the subject matter of every letter if she hopes to be of service to her employer, or else she is an automaton and then no publication of a libel could be made to her. If it be claimed that a stenographer is a machine; that words flow through brain and hand to paper and from notes to typed pages without creating an impression, then there can be no publication in dictation. If, on the other hand, the stenographer is an intelligent being taken into the most innermost circle of confidence; and if she be a co-servant with a duty to perform, then she is interested, and has a right to know of attacks made on her employer. A stenographer or clerk is usually required to file correspondence and be ready at a moment's notice to hand them to her employer.

To hold that a clerk in an office or a stenographer is an absolute stranger, a disinterested third party to the subject matter of every transaction of the employer's business, would be to upset the safety of commercial transactions. Never a day passes that a railroad company or an insurance company in investigating charges against employes or claims does not write libelous letters upon which they could be sued if dictation to a stenographer is publication.

On the vital question, counsel for appellee relied almost entirely on *Gambrell v. Schooley,* 52 L. R. A. 87, but it must be carefully noted that in this case there was no claim of privilege; simply a claim that there was no publication. It is not contended in this case that the subject-matter was one in which the stenographer was interested, or about which the stenographer had any concern. *Pullman v. Hill,* 1 Q. B. 529, is the basis of

conclusions drawn in the *Gambrell case, supra,* but the court held that there was no question of privilege in *Pullman v. Hill,* and there is none here, as the appellant owed no duty in the matter to any one.   In *Brozsins v. Frerer,* 1 Q. B. 843, decided three years later than *Pullman v. Hill,* the strict rule laid down in the latter case was considerably modified.   There is a claim of privilege in the case before this court and no such claim or privilege was made in either of the above cases cited.   *Owen v. Ogilvie Co.,* 53 N. Y. Supp. 1033; *Youmans v. Smith,* 153 N. Y. 214.

While there are no reported cases exactly in point in our own state, we have examined *Lattimer v. Illinois, etc., R. Co.,* record number 9214 of the supreme court, in which this identical question was raised.   Lattimer claimed that one Dunn, an employe of the railroad company, libeled him by charging him with stealing while acting as conductor.   There was no proof of publication except to the stenographer and other clerks and agents. When the plaintiff rested, the defense made a motion to exclude testimony of plaintiff and direct verdict for defense, which motion the lower court granted.   Upon appeal from such action, this court affirmed the verdict without a written opinion.

Express malice must be proved before an award of substantial damages can stand.

On the question of internal and intrinsic evidence, the courts of both England and America have been altogether consistent and firm in their holdings that there must be some proof of actual malice, and that merely strong language is not proof, and it is to be remembered that there is no proof other than that of strong language being used.   *Toogood v. Spyring,* 1 Cr. M. & R. 181.

Where the defamatory matter is published upon a lawful occasion, that is, upon an occasion which furnishes *prima facie* a legal excuse for it, as where it is done in the discharge of some

public or private legal or moral duty, or in the conduct of defendant's own affairs in matters where his interest is concerned, it is said to be conditionally a privileged communication. The legal excuse for the publication rebuts the presumption of malice from the falsity of the communication and where such matter is the subject of an action, the plaintiff must show malice to maintain it. 4 Sutherland on Damages, 3512.

To justify the finding of any sum beyond fair compensation for the injury, in order to punish the defendant, the nature of the defamation and circumstances of the case should be such as to satisfy the jury that there was actual malice or a recklessness equivalent thereto. 4 Sutherland on Damages, 3486.

Actual ill will or malice will enhance the damage, and may be shown for that purpose, except, of course, where exemplary damages are not allowed, but need not be shown, to entitle the plaintiff to a recovery, except in cases in which the communication complained of is privileged, then express malice must be averred and proved.

There was no actual or express malice entertained toward the plaintiff, and, there being none, there was no room for punitive damages. The theory of punitive damages is usually based upon the interests of the individual and of society, which are blended. Here the interest of society and of the individual has nothing to do with the blend. The injury was merely technical and theoretical, and being so, there was nothing for which to be punished. Punitive damages are the last to be assessed in the element of injury to be considered by the jury and should be first to be rejected under facts in mitigation. There are cases, perhaps, where punitive damages would be large and actual damages small, but we doubt if there are cases where the actual damages are nothing and the punitive damages large; where society is not concerned and the publication merely to the officers and servants of the defendant and there was no proof of ex-

press malice. *Stacy v. Portland Publishing Co.,* 68 Me. 288; *Cockayne v. Hodgkisson,* 5 C. & P. 488; *Gattio v. Kilgo,* 128 N. C. 402; Townsend on Slander and Libel, 288; Hodgers on Slander and Libel, 279; Starkey on Slander and Libel, § 674.

In the case at bar, Hines' statement was made to the company's officers and servants, and not to the public, except in one single instance, according to no testimony except that given by Hines himself, in an honest effort to tell the truth, as made by Hines to a man with whom negotiations were pending for a partnership in the same business. *Jarnigan v. Fleming,* 43 Miss. 726; *Hubbard v. Rutledge,* 57 Miss. 7; *Railway Co. v. Brooks,* 69 Miss. 169; *Railroad Co. v. Ely,* 83 Miss. 519; *Fritz v. Williams,* 16 South. 359.

But even if it be granted that publication has been had as to both defendants, and that malice was shown, then the verdict as rendered by the jury undoubtedly showed passion and prejudice of the highest degree.

In this case no element or evidence of actual damages was proven, not one word to support the smallest fraction of a unit. There was not the slightest offer to prove malice or ill will, or desire or attempt to injure, that should be punished. There was no injury to society; no proof of mental anguish, suffering, or lack of business standing. The appellee was not angered sufficiently to meet the engagement made between himself and Hines, for the purpose of discussing the alleged libel. *Bee Publishing Co. v. World Publishing Co.,* 59 Neb. 713; *Jones v. Greely,* 25 Fla. 629; *Courier Journal Co. v. Sallee,* 104 Ky. 335; *Pew v. Robinson,* 95 Ind. 109; *Sowers v. Sowers,* 87 N. C. 303; *Libby v. Fowler,* 90 Me. 262; *Montgomery v. Know,* 23 Fla. 595; *Pallaham v. Ingram,* 122 Mo. 355; *Gray v. Times Co.,* 78 Minn. 323; *Holmes v. Jones,* 121 N. Y. 461; *Dobard v. Nunez,* 6 La. Ann. 294; *Turnton v. New York Record Co.,* 22 N. Y. Sup. 766; *Maxwell v. Kennedy,* 50 Wis. 648;

*Bank v. Bowdre,* 92 Tenn. 723; *Reed v. Keilh,* 99 Wis. 672; *Templeton v. Greaves,* 59 Wis. 95; *Wilson v. Nooman,* 35 Wis. 349; *Girard v. Moore,* 86 Tex. 675; *Klinck v. Colby,* 46 N. Y. 427; *White v. Nichols,* 3 How. U. S. 266.

No exemplary or vindictive damages can ever be allowed in a case where the plaintiff has not proved that he has sustained more than nominal damages.    *Dickens v. Sheperd,* 22 Md. 412; *Stacy v. Portland Pub. Co.,* 68 Me. 279; *Robinson v. Goings,* 63 Miss. 500; *Girard v. Moore,* 86 Tex. 675, 26 S. W. 945; *Kuhn v. Chicago, etc., R. Co.,* 74 Iowa, 140; *Schippel v. Norton,* 38 Kan. 527; *Maxwell v. Kennedy,* 50 Wis. 648, 7 N. W. 657; *Schimmelfenig v. Donovan,* 13 Ill. App. 50; 1 Sutherland on Damages, 748.

*May & Sanders* and *Flowers, Fletcher & Whitfield,* for appellee.

The letter written by Hines maligns Shumaker.    It holds him up to ridicule; charges that he is not honest; that he is not an insurance man; that he will not work; that he has gravitated to the mire; that he belongs to a class of the meanest men on earth.    What duty was there on the part of Hines which required him to say these things to his agents? The most that could be affirmed of these circumstances is that there was a duty resting upon Hines to make some sort of communication to his agents.    It could not be said that the circumstances called for a letter of personal abuse of Shumaker.    If Shumaker had made false statements about the Lamar Life Insurance Company there was no privileged occasion for the insurance company to retaliate with false statements about Shumaker.    If Hines had sent out to the agents of his company a letter by which to refute the charges the appellee is alleged to have made, he, Hines, would have performed a duty which rested upon him. But he could not abuse this so-called duty by abusing Shumaker.

Whether Hines thought Shumaker dishonest, or mean, or incapable, was of no importance to the agents in the field.

It cannot avail appellants that Hines testified that he acted in good faith. One cannot publish false and defamatory charges against another unless the occasion for the publication of such false and defamatory matter is privileged. And there was no occasion for the publication by Hines of his opinion that Shumaker possessed all the imperfections and faults attributed to him in the letter.

It would be a dangerous doctrine indeed to permit one who finds himself amid circumstances which require him to make some sort of communication to say with impunity anything he pleases. The thing uttered must be the thing which the occasion warrants. The circumstances make a proper communication privileged, but not an improper one.

The subject-matter of the communication sent out by Hines to the agents of the Lamar Life Insurance Company was the character of J. M. Shumaker. In this Hines had no interest; nor did the agents of the insurance company in the field have any. They might have had a common or similar interest in the alleged reports being circulated by Shumaker, but these are discussed in the letter in only a remote way, there Shumaker being referred to as a "knocker." If Hines had written the agents that Shumaker was circulating certain false reports about the company and had directed the agents to correct them, or to investigate the rumors, and in so writing his agents, Hines had falsely charged Shumaker with making unwarranted criticisms of the Lamar Life Insurance Company, and had in so doing acted in good faith, the proposition would be entirely different. But the letter of June 17, 1908, does not say what false charges were being circulated by Shumaker. The agents are required to do nothing. They are only given Hines' opinion of the

character and prospects of Shumaker, a matter in which they had no interest whatever.

The definition of privileged communication given by the supreme court of Florida in *Alabama v. Baldwin,* 10 L. R. A. (N. S.) 1051, requires that the communication be made (1) in good faith; (2) by one having an interest in the subject-matter; (3) in a proper manner; (4) on a proper occasion; (5) to one having a like interest in the subject-matter. It follows that a communication is not privileged when it is not made in good faith. No duty, interest or occasion can justify the publication of a malicious libel. This is absolutely true unless the communication is made in the course of judicial proceedings or in the performance of other official duties in which there is a compelling obligation upon the person to speak. No person or private corporation in the conduct of its business can, at any time, under any circumstances, to any person, publish a malicious defamatory charge against any person with impunity. such charge may be made in confidence, there may be interests to protect; it may be made in self-defense; yet if it is malicious, it is actionable.

In order that a communication may be classed as one of qualified privilege, it must be made in a proper manner. This in the case at bar was made by circular letter, not marked confidential, sent apparently to all agents of the company in this state. It is written in extravagant language; it does not purport to give any of the facts upon which it is based; it is simply a criticism and discussion of J. M. Shumaker; it is apparently in a spirit of anger; it includes matters which do not in any way pertain to the business of the Lamar Life Insurance Company; it is not confined to any relations between Shumaker and the Lamar Life Insurance Company; it is plainly published for the purpose of giving expression to the author's general and numerous opinions of Shumaker, and with a view of harming

him, rather than of helping the Lamar Life Insurance Company. It is evident that this letter could protect no interest of the insurance company; and that in the publishing of it, the insurance company was not performing any duty it had to anyone, nor defending itself against any charge. Not one fact is stated in this communication that could be legitimately employed by any agent of the company in transacting the company's business. *Railway Co. v. Brooks,* 69 Miss. 168.

When the motion to exclude the evidence offered by appellant was ruled upon by the court below, it was held that the dictation of the letter to Miss Hatry, the stenographer, was a publication. And it was held upon good authority that if one finds it is his duty to write defamatory charges of another he should do his own writing, and not unnecessarily give it to third persons to read. It is true that the stenographer is a part of the modern office. But the improvement in business methods and office facilities and conveniences should not make the name of good citizens any less secure from attacks of this character. The unfairness of such a rule as would permit the publication to stenographers is exemplified in the present case where it appears that a great number of copies of this letter were made and no one is able to tell what became of the extra copies. No precaution whatever was taken to prevent copies from falling into the hands of strangers. A letter which is so important and so confidential as are privileged defamatory communications, should be copied and mailed out by the author himself. This would entail no vast amount of work on men who hold such important positions as did Hines. He testified that he was not in the habit of writing such letters, and that in fact this is the only one he ever wrote. Shall it be declared that one may get out a circular letter containing defamatory matter by whatever method happens to be used in one's office? Suppose Hines had established a system whereby letters would be written by one,

proof-read by another, and signed and mailed by another. Could it be held that this up-to-date system was not a publication to them? There is no crying need for a removal of the restrictions upon the publication of privileged defamatory matter. There is no necessity to facilitate the circulation of such literature. It is not too much to require of a man that he do his own writing when he wants to defame his neighbor. 25 Cyc. 400; *Gambrill v. Schooley,* 52 L. R. A. 87; *Puterbaugh v. Gold Medal Co.,* 1 Am. & Eng. Ann. Cas. 101 and notes; *Keene v. Ruff,* 1 Clark (Iowa), 482.

It is a sufficient publication that Bailey, an agent of the insurance company, to whom the letter was sent, showed it to Mr. Noah and Mr. Downing at Kosciusko. Bailey was himself an agent of the same insurance company. The letter had been turned over to him and was not marked in any manner to indicate its confidential nature. The letter was entrusted to him to use as he saw fit. He was as much an agent of the company as Hines. Counsel for appellant call him a "sub-agent." He was not the agent of Hines. He was an agent of the Lamar Life Insurance Company. He was employed by that company. The letter was written to him to be considered by him and used in the performance of his duties as agent. While Bailey was soliciting insurance for the company as their agent, he showed the letter to Noah and Downing. The letter was not sent to him with instructions to exercise care and discretion in exhibiting it. His act in using the letter was the act of the insurance company. Or if this contention is not correct, it is undoubtedly true that if one writes a defamatory letter and permits a third person to see it, the writer is responsible for its publication. *McLaughlin v. Schnellbacher,* 65 Ill. App. 50; *Callan v. Gaylord,* 3 Watts (Pa.), 32; *Rumney v. Worthley,* 186 Mass. 144, 71 N. E. 316.

Learned counsel for appellants quote from Newell on Slander

and Libel to the effect that the original author of slander is not liable for its repetition by others over whom he has no control. It may be answered that in the case at bar the company had some control over the agent Bailey. He could have been required not to show this letter to any one. On the other hand, it was sent to him without a word of precaution and for the evident purpose of being used by him in whatever manner he saw fit.

The case of *Southern Express Co. v. Fitzner,* 59 Miss. 584, relied upon counsel for appellant, is not in point. In that case the agent was the author of the libel. He originated it. The principal could not possibly foresee that he would write a libelous letter and publish it. He had no authority to do it. He had not been notified to do it nor had the express company given him any reason to believe that it was his duty to do so. In the case at bar, however, the insurance company wrote the letter and sent it to the agents with no direction as to how it was to be used; and left it to the agent to do as he pleased with it.

It seems to be the law that where persons to whom the libel is sent are not agents of the sender with respect to the handling of the writing even in cases where the sender is a stranger, the author is responsible for its publication by such other person if the publication by him was a natural consequence of its being placed in his hands. And in such cases it is a question for the jury to decide whether the publication was a natural or reasonable consequence of the sending of the letter to such other person or placing it under control of that person. 18 Am. & Eng. Ency. of Law (2d ed.), 1018; *Terwilliger v. Wands* (N. Y.), 72 Am. Dec. 420; *Zier v. Hofflin* (Minn.), 53 Am. Rep. 9.

There was no plea of justification filed by the defendants in the case at bar. Such a plea must allege directly and distinctly the truth of the defamatory matter charged. 13 Ency. Pl. & Prac. 81. And it must also set out specifically the acts of the

plaintiff relied upon to support the plea. Newell on Slander and Libel (2d ed.), 651. If a notice is filed under the statute in the place of a plea the same particularity of averment is required. There is but one absolute defense to an action of libel for the circulation of defamatory charges and that is a plea of truth. And the truth can be proved only when it is pleaded. It cannot be proved in mitigation of damages. *Jarnigan v. Fleming,* 43 Miss. 710. This above cited case was decided in 1870 but the provisions in Code 1906, § 743, that in such actions the defendant under the plea of not guilty, may give in evidence any mitigating circumstances to reduce the damages, notwithstanding he may also have pleaded a justification, were then found in Code 1857, art. 96, at page 493, in precisely the same words.

In an action for libel the question of damages compensatory and punitive is peculiarly one for the jury. No one can definitely say how far a libel hurts and how much will fairly compensate the plaintiff or punish the defendant except a jury. *Holmes v. Jones* (N. Y.), 49 Am. St. Rep. 646; *Tracy v. Hacket* (Ind.), 65 Am. St. Rep. 398; *Gambrill v. Schooley* (Md.), 86 Am. St. Rep. 414.

Argued orally by *Tim E. Cooper* and *V. Otis Robertson,* for appellant, and by *J. N. Flowers,* for appellee.

WILBOURN;* Special Judge, delivered the opinion of the court.

J. M. Shumaker brought suit in the circuit court of Hinds county, Miss., against W. W. Hines and the Lamar Life Insurance Company for the publication of the following letter:

---

* Whitfield, C. J., having recused himself in this case, R. E. WILBOURN, Esq., a member of the supreme court bar was appointed special judge and presided as such in his place.

"The Lamar Life Insurance Company.

"Jackson, Miss., June 17, 1908.

"To our Representatives—Gentlemen: There are but two kinds of life insurance field men—those that are good, and those that are no good. The knocker is the most obnoxious type of the latter class. The hardest work a man ever undertakes in this world is to endeavor to lift himself up by trying to pull his brother down. A knocker is sometimes naturally born a knocker. Others are knockers because they can't make good in a square fight, and rather than quit honestly they gravitate to the mire and

" 'In the mud and scum of things
Something always, always sings.'

"The knocker's tongue is always full of poison, and the meanest man on earth is the one who will wound a man's character with his tongue, and he is no whit less mean if he attempts to wound the character of the Lamar Life Insurance Company. Gentlemen, there is a big knocker abroad in the land. He is one J. M. Shumaker, reputed a general agent for Mississippi of the Germania Life Insurance Company of New York. His name may be a misnomer, but we haven't seen any proof on the subject. He clearly is not a life insurance man. His company last year in the whole United States gained, according to the Spectator Co., only $376,028 of insurance. The Lamar Life did three times better than that in only one state. Shumaker, in the state of Mississippi last year, with all of his subagents, which field force we can't see with the naked eye, wrote the great sum of $134,000 of insurance, and while he was thus busy and 'knocking' his policy holders in Mississippi terminated for him $301,765 of insurance.

"Shumaker is getting rich and is mad about it. His big Germania has a ratio of assets to liabilities of $1.05, as compared to the Lamar's $2.21. His company has been in business forty-

eight years, and is not increasing its writings as fast as we, who are only two years old. He criticizes the Lamar upon every occasion, and starts absurd rumors wherever he goes. Of course they are all silly.

"I write this merely to keep you posted about even small matters in the field. We don't write about Shumaker to give you something to knock him with. Let him alone. We wrote during the first ten days of June more business than he and his 'big' force did the whole of last year in Mississippi.

"A successful writer and a successful company are products of positive qualities. Positive qualities mean boosting, instead of knocking; hustling, instead of procrastinating; being keen, dignified, and informed. And it goes without saying that an indispensable condition for success in every career is contained in a single word — WORK. An insurance writer may be brainy, but he must work; honest, but he must work; diplomatic, but he must work; optimistic, but he must WORK. Shumaker isn't any of these things.

"So don't worry about him and his talk. Follow the old injunction, which says that, 'When a hog muddies a stream, step up the branch ahead of him to get your drink.'

"The Lamar Life is bigger, stronger, and better each succeeding day, and its stream is so wide that Shumaker muddying can't ripple far.

"How is the contest going? Why, there are about thirty agents making the best fight you ever saw, with nobody yet a winner.

"Hustle, boys, hustle. Boost, brothers, boost.

"With best wishes, I am very respectfully,

"W. Warner Hines,

"WWH—CAH          Superintendent of Agents."

At the conclusion of the testimony the court peremptorily instructed the jury to find for the plaintiff, but submitted the

question as to the amount of damages, compensatory and punitive, to the jury under proper instructions. The jury returned a verdict in favor of plaintiff for $7,500, but on motion for a new trial the court below required the plaintiff to remit all of the verdict except $3,000, and awarded judgment for that amount.

It is conceded that the letter is libelous *per se;* but, so far as the Lamar Life Insurance Company is concerned, it is insisted that the communication is privileged, and that it was only published upon a privileged occasion, and to persons having a corresponding interest in the subject-matter of the communication. The court below was of the opinion that the publication of the letter to the stenographer, who made a typewritten copy of it from a pencil copy furnished her by Mr. Hines, and then made about fifty copies of the typewritten copy on the multigraph machine, was a publication outside the privilege so far as the Lamar Life Insurance Company is concerned; and, it not being disputed that Mr. Hines had mailed a copy of the letter to Mr. U. E. Cross, another outsider, with whom Hines was at the time negotiating about a private matter, the court granted the peremptory instruction.

We do not think it necessary in this case to pass at this time on the question as to the publication to the stenographer, but prefer to rest our conclusion upon another ground presently to be stated. The occasion upon which the letter was written and mailed to the representatives of the Lamar Life Insurance Company, as detailed by Mr. Hines and taken most strongly in favor of the appellants, was as follows: It was reported to Mr. Hines, who was the superintendent of agents of the Lamar Life Insurance Company, by several of its agents, that they had heard that the plaintiff, J. M. Shumaker, who was the superintendent of agents in Mississippi for the Germania Life Insurance Company, a competitor of the Lamar Life Insurance Company, was

stating to people with whom he was endeavoring to write insurance, and to prospective policy holders of the Lamar Life Insurance Company, that the Lamar Life Insurance Company was young, was local, was weak, was liable to go to pieces at any time, was on its last legs, had spent a part of its capital stock, could not possibly last long, that its stock was below par, and that it had a mortal at the head of it. These statements were not made directly by Shumaker to agents of the Lamar Life Insurance Company, and the agents had no personal knowledge themselves as to whether or not the statements had actually been made by Shumaker. They simply knew that other parties said such statements were being made by Shumaker. Without taking the matter up with Shumaker at all, and without having any refutation of the charges or statements of Shumaker communicated to the persons to whom Shumaker had talked or published in the communities where it was stated Shumaker had started these rumors, the letter complained of was issued and mailed to all of the subagents of the Lamar Life Insurance Company in all the different localities of the state of Mississippi where said subagents resided, without reference to whether or not any rumors had been circulated in these communities by Shumaker, and without reference to whether or not all of said agents had heard of said rumors.

Where the communication is upon a privileged occasion and is a privileged communication, the burden is upon the plaintiff, of course, to show actual malice in order to recover. But if the privilege of the communication is not conceded, and does not appear from the plaintiff's testimony, as is the case here, the burden is then upon the defendant, who relies upon the privilege, to establish it. *Abraham v. Baldwin*, 52 Fla. 151, 42 South. 591, 10 L. R. A. (N. S.) 1051. In Odgers on Slander and Libel, pp. 286, 287, it is stated as follows: "Not every communication made on a privileged occasion is privileged. The

defendant may, in answer to an inquiry, launch out into matters
which have no bearing on the question, or in writing to a person
who has a joint interest with himself in one undertaking, he
may wander off into other matters with which his correspondent
is not concerned.   The presence of such irrelevant matter does
not, of course, affect the judge's ruling that the occasion was
privileged.   As a rule it will be merely evidence of malice to
take the case out of the privilege.   But there seems to be some
cases where the communication is so wholly irrelevant and im-
proper that the judge while ruling that the occasion was one
which would have afforded protection to a proper letter, may yet
declare that no privilege at all can attach to the letter which the
defendant in fact wrote on that occasion."   "The scope of the
defamatory matter must not exceed the exigency of the occa-
sion."   Cook on Defamation, 35.   "A communication made by
a person is privileged which a due regard to his own interest
rendered necessary.   He is entitled to protect himself.   In such
cases, however, it must appear that he was compelled to employ
the words complained of.   If he could have done all that his
interest or duty demanded without libeling or slandering the
plaintiff, the words are not privileged.   It is very seldom neces-
sary in self-defense to impute evil motives to others or to charge
your adversary with dishonesty or fraud."   Newell on Slander
and Libel (2d ed.) § 108.   See, also, Newell on Slander and
Libel, §§ 65 and 67.   "In determining whether or not a com-
munication is privileged, the nature of the subject, the right,
duty, or interest of the parties in such subject, the time, place,
and circumstances of the occasion, should all be considered."
*Abraham v. Baldwin,* 52 Fla. 156, 42 South. 592, 10 L. R. A.
(N. S.) 1051.

While not intending to hold that in every case the question
as to whether or not the communication exceeds the privilege
of the occasion is a question for the court, we have reached the

conclusion that in this case, the letter being plain and unambiguous in its terms, the question as to whether or not it is within the privilege is a question for the court, and that, acceding the facts as to the occasion of its publication to be as detailed by all the witnesses for appellant, the letter was not a privileged communication. We have carefully considered its language and the entire letter, and are constrained to hold that it makes the general and unqualified charge that Shumaker is not brainy, is not honest, is not optimistic, is not diplomatic, and that such charge in said letter, communicated to all the agents of the Lamar Life Insurance Company, without reference to whether or not they knew of Shumaker's criticisms, and without reference to whether or not said criticisms had been made 'in their communities, was in excess of the privilege of the occasion, and was not relevant to a proper refutation of the charges and criticisms that it had been reported to Hines Shumaker had made in certain localities. The letter goes beyond legitimate refutation, and broadly, generally, and unqualifiedly denounces Shumaker. A proper communication, and in strong language, to the agents who reported the rumors as to the criticisms of Shumaker, might have been sent to said agents, or published in the localities where the rumors were reported to have been circulated by Shumaker; but appellants were not warranted in going beyond that, and denouncing Shumaker as lacking in brains and as dishonest to the extent and in the manner that was done in this case. There must be some bounds within which the right to retort upon one's adversary should be prescribed, or else there would be no sacredness to character. It is not pleaded by the appellants that Shumaker was lacking in brains, and generally dishonest as matter of fact, nor was there any proof from which the jury would have been authorized in reaching such a conclusion. Appellant sought by their pleadings and proof to qualify the language of the letter, by pleading:

and endeavoring to prove that the letter did not charge, and was not intended to charge, generally, dishonesty to the plaintiff. But the question for the court to determine is, not what language the appellants meant to use, but what did they mean by the language actually employed? We think, therefore, that the court below did not err, for the reasons stated, in granting the peremptory instruction.

But one other question remains to be considered, and that is as to the amount of the damages. The question of damages is peculiarly one for the jury, and in a case of this character the plaintiff is not confined to recovery of mere pecuniary damage, but it is rarely the case that the compensatory damages to which a plaintiff, who has been defrauded, is entitled, can be adequately measured by the extent of his pecuniary loss. It does not appear, under the very liberal and accurate instructions that were granted by the court below on the question of damages, nor from the proof and circumstances of the case, that the damages awarded were exemplary alone, nor that there were no actual damages in a truly legal sense, and we do not feel warranted in disturbing the judgment of the court below, in view of the remittitur required by the trial judge.

It follows, therefore, that the judgment must be *affirmed.*