HAND *v.* INDUSTRIAL LIFE & HEALTH INS. Co.

(In Banc. Feb. 10, 1936. Suggestion of Error Overruled Mar. 16, 1936.)

[165 So. 616. No. 32047.]

Lotterhos & Travis, of Jackson, for appellant.

824

Robertson, Campbell & Robertson, of Jackson, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant brought this action in the circuit court of Hinds county against appellee to recover damages for an alleged slander of him by appellee. Appellee's demurrer to the declaration was sustained, and appellant declining to plead further, final judgment was rendered dismissing the cause. From that judgment, appellant prosecutes this appeal.

Appellant was president of the North American Mutual Insurance Company, which company was engaged in the writing of health and accident insurance. Appellee was engaged in the same character of business. W. E. Palmer was appellee's agent to solicit insurance and collect premiums. The declaration charges the alleged defamation in this language: "That on or about the said 8th day of July, 1935, the defendant, through its duly authorized agent Palmer, went to the home of Lottie Robinson, and others in the City of Canton, for the purpose of soliciting of and from the said Lottie Robinson, and others, an application, or applications, for life and health insurance in its own said company and for the purpose of collecting premiums. That at the said time and place the said agent Palmer, then and there acting for and on behalf of said defendant in the course of his employment and in the furtherance of the business of the said defendant and while actively soliciting applications for policies for and on behalf of said defendant, saw a policy

which had been theretofore written by the North American Mutual Insurance Company, the mere sight of which provoked and aroused the said agent Palmer, and without any reason, excuse or justification the said agent then and there acting for his said master, and in the direct line of his employment, and in the presence and hearing of the said Lottie Robinson and various and sundry persons without any justification whatsoever, did falsely, maliciously, carelessly, and willfully speak, publish and declare, in the presence and hearing of various and sundry persons then and there present, the following wicked, infamous, false, and defamatory slander of and concerning the plaintiff, to-wit: That said policy, meaning the policy of the said North American Mutual Insurance Company, was no good; that said company was no good, and that the president of said company, meaning the plaintiff, was put in jail for doing some crooked work while working for another company and that as soon as he, meaning the plaintiff, got out of jail, he, meaning the plaintiff, organized the said North American Mutual Insurance Company, and that he, the said plaintiff, had beat an old negro out of his money, and would beat the policy holders of said North American Mutual Insurance Company of Jackson, Mississippi, out of money, meaning thereby to charge, and did in fact charge and convey the impression that the plaintiff, as a representative of an Insurance Company, had beaten people out of money for which he had been sent to jail, and maliciously intending to convey the impression that the said plaintiff in his said employment had committed a crime against the laws of the state.''

The demurrer was sustained upon the ground that Palmer, in uttering the language set out in the declaration, was acting beyond the scope of his authority, and therefore did not bind the appellant, his principal. In Loper v. Yazoo & M. V. R. Co., 166 Miss. 79, 145 So. 743,

745, the court said: "The phrase 'scope of the employment,' adopted by the courts for the purpose of determining a master's liability for the acts of his servants, has 'no fixed legal or technical meaning;' . . and 'the ultimate question is whether it is just that the loss resulting from the servant's acts should be considered one of the normal risks of the business in which the servant is employed which that business should bear,' " adopting A. L. I., Restatement, Agency, sec. 229. The court said further in that case: "The matters of fact usually taken into consideration in answering this question are set forth in section 454, A. L. I. Rest., supra, one of which is 'whether the master had reason to suspect that such will be done.' "

In Davis v. Price, 133 Miss. 236, 97 So. 557, the court quoted with approval from 6 LaBatt's Master and Servant (2 Ed.), p. 6704, as follows: "A master clearly cannot be held responsible for a tort committed in furtherance of his business, unless it is shown to have also been committed in the course of the appointed duties of the tort-feasor."

Was Palmer's tort one of the normal risks of appellee's business? Putting it differently, should appellee have reasonably anticipated it as a probable occurrence? We think this question must be answered in the negative. Suppose Palmer had committed an assault and battery upon appellant with the view of getting rid of a competitor, or, for the same reason, had embodied the defamatory language in writing and published it, which would have been a crime, we think it clear that he would have been acting beyond the scope of his authority. We are unable to see any difference in principle in an attempt to destroy a competitor in that manner and an attempt to destroy one as Palmer did.

Craft v. Magnolia Stores Co., 161 Miss. 756, 138 So. 405; Houston v. Oppenheim, 166 Miss. 619, 145 So. 339,

and Southern Express Co. v. Fitzner, 59 Miss. 581, 42 Am. Rep. 379, although not in point upon their facts, support the principle upon which this case is decided.

Hines v. Shumaker, 97 Miss. 669, 52 So. 705, does not support appellant's contention. In that case the Lamar Life Insurance Company, acting through its superintendent of agencies, wrote a letter charging Shumaker, the state representative of another insurance company, of being generally dishonest, lacking in brains, undiplomatic, and a "mean knocker." The superintendent had been informed that Shumaker was making defamatory statements as to the Lamar Life Insurance Company. The court held the letter libelous per se. The superintendent had general supervision over all the agents of his company; it was his duty to instruct and control the manner in which they should perform their duties, including the manner in which they should treat their competitors. The court held that the superintendent was acting within the scope of his authority and bound his principal.

We think the difference between that case and the present case is that the action of the superintendent there naturally grew out of the authority conferred upon him by his principal, although not expressly authorized. The principal could have reasonably anticipated the probability of such action, therefore it was one of the normal risks of the business.

Affirmed.

## Concurring Opinion.

**Smith, C. J.**, delivered an opinion, specially concurring.

I think the demurrer to the declaration was properly sustained, but not for the reason discussed by my associates. If Palmer uttered the defamatory words for the purpose of inducing Robinson to accept an insurance

policy from the appellee, it, the appellee, is liable in damages therefor. But the declaration does not allege that such was Palmer's purpose; it simply alleges that while soliciting the acceptance of a policy from the appellee by Robinson he saw a policy written by the North American Mutual Insurance Company, ''the mere sight of which provoked and aroused the said agent, Palmer, and *without any reason therefor, excuse or justification* (italics mine) the said agent then and there, acting for his said master and in the direct line of his employment,'' uttered the alleged defamatory words. This allegation is simply that Palmer uttered the defamatory words while he was discharging a duty owed by him to the appellee, but wholly fails to charge that his purpose in so doing was to aid him in the discharge of that duty. The master is not responsible for all acts of his servant that are within the scope of the servant's employment, but only for such as are ''actuated to some extent by an intent to serve his master.'' Restatement, vol. 1, Agency, sec. 235, Comment A.

This defect in the declaration was specifically pointed out in one paragraph of the demurrer thereto.

## DISSENTING OPINION.

**Ethridge, J.**, delivered a dissenting opinion.

I think the majority opinion misapplies the law on the facts alleged in the declaration, and that the declaration states a case under the authorities of this state, and that, consequently, the demurrer should have been overruled.

From the quoted part of the declaration in the majority opinion, it appears that Palmer, the authorized agent of the Industrial Life & Health Insurance Company, on or about July 8, 1935, went to the home of Lottie Robinson, in the city of Canton, Mississippi, for the purpose of

soliciting from her and others an application or applications for life and health insurance, and for the purpose of collecting premiums. It was, therefore, for the purpose for which Palmer was employed that he went to the home of Lottie Robinson, and uttered the slanderous statements against Hand and the insurance company represented by him for the purpose of securing for his (Palmer) company business which had been procured by Hand for his company. It is alleged that said agent, Palmer, then acting for and on behalf of said defendant, and while actively soliciting applications for policies on behalf of said defendant, saw a policy which had been written by the North American Mutual Insurance Company, of which Hand was president, and proceeded to utter the slander set out in the majority opinion that said policy (meaning the policy of the North American Mutual Insurance Company) was no good; that said company was no good, and that the president had been put in jail for doing some crooked work while working for another company, and that he had beaten an old negro out of his money, and would beat the policyholders of the North American Mutual Insurance Company out of their money, etc., by which Palmer meant to charge that Hand, as a representative of an insurance company, had committed a crime against the laws of the state.

If these statements contained in the quoted statement in the majority opinion from the declaration do not bring Palmer within the purview of our law making the master responsible for the torts of his servants committed in the course of their employment in the furtherance of the master's business, then it is difficult to conceive of language that would state a case.

The authorities relied upon in the majority opinion do not sustain it, but, on the contrary, appear to sustain the appellant's view. The case of Loper v. Yazoo & M. V. R. Co., 166 Miss. 79, 145 So. 743, held that the fact that the

servant's conduct was unauthorized does not bring it outside the scope of his employment. In the case at bar, the very purpose of the agent, Palmer, in going to the place was to secure insurance, and when he saw the policy of the company represented by Hand, he (Palmer) proceeded to defame Hand and the company he represented. Why? Manifestly, for the purpose of securing the business that Hand had written; if his statements were believed, Palmer, it would appear, hoped that the policies written by Hand would be surrendered or canceled and new and reliable insurance taken. It was for this purpose the slanderous statements were made, and how it can be said to be outside the scope of his authority is difficult to perceive, and such conclusion is not supported by the authorities relied on, which, as stated, support the appellant's declaration. Some of the cases relied on in the majority opinion state the principles of law correctly in the particular cases, but are not analogous to the facts set forth in the case at bar.

I do not conceive that the statement quoted from A. L. I. Restatement, Agency, section 229, was intended to change the law announced in this state.

In Richberger v. American Express Co., 73 Miss. 161, 18 So. 922, 31 L. R. A. 390, 55 Am. St. Rep. 522, this court discussed the law of responsibility of the master for the acts of servants when engaged in the scope of their duties and about the master's business, and overruled some of the cases in this state which had followed the English case of McManus v. Crickett, 1 East, 106, and on page 168 of 73 Miss., 18 So. 922, 31 L. R. A. 390, 55 Am. St. Rep. 522, the court said: " 'The fallacy of this reasoning was that it made a certain mental condition of the servant the test by which to determine whether he was acting about his master's business or not. Moreover, with respect of all individual acts done by a servant in the supposed furtherance of his master's business, it clothed

the master with immunity if the act was right, because it was right; and if it was wrong, it clothed him with a like immunity because it was wrong. He thus got the benefit of all his servant's acts done for him, whether right or wrong, and escaped the burden of all intentional acts done for him which were wrong. Under the operation of such a rule, it would always be more safe and profitable for a man to conduct his business vicariously than in his own person. He would escape liability for the consequences of wrong acts connected with his business springing from the imperfection of human nature, because done by another, for which he would be responsible if done by himself. Meanwhile the public, obliged to deal or come in contact with his agents, for intentional injuries done by them might be left wholly without redress. A doctrine so fruitful of mischief could not long stand unshaken in an enlightened system of jurisprudence.' And he states that it is repudiated by eminent text writers, and the great weight of modern authority, citing quite fully the authorities to date." At the close of the opinion in the Richberger case the court quoted from a prior decision [Rounds v. Delaware, L. & W. R. Co., 64 N. Y. 129, 21 Am. Rep. 597] in which it was held there was no liability on the facts of that case, as follows: "The master who puts a servant in a place of trust or responsibility, or commits to him the management of his business or care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty and authority and inflicts an unjustifiable injury upon another."

The cases of Walters v. Stonewall Cotton Mills, 136 Miss. 361, 101 So. 495, and Alden Mills v. Pendergraft, 149 Miss. 595, 115 So. 713, cited, support the declaration in the case at bar absolutely, as I see it. In Indianola

Cotton Oil Co. et al. v. Crowley, 121 Miss. 262, 83 So. 409, this court held that where the general manager of a plant told a bookkeeper to leave the books and accounts with him for inspection, and, when the bookkeeper hesitated, assaulted him, the general manager was acting within the scope of his employment and about his master's business, and the master was liable for his acts, although there was no authority therefor. If the wrongful act is unauthorized, but is committed while the servant is about his master's business, the master is liable, but if the tort is disconnected with the master's business, there is no liability on the master. In the case at bar, if Palmer had uttered the slander when he was not pursuing his master's business, of course, his master would not be liable, although the servant was his agent for the purpose of writing insurance. This question has been dealt with in many decisions in this and in other states, but it is not deemed necessary to go beyond this state to find authorities. They will be found in abundance in the Mississippi and Southern Digest, title Master and Servant, key numbers 304 to 308, and in the Decennial Digest under the same title.

It is said in the majority opinion that the case of Hines v. Shumaker, 97 Miss. 669, 52 So. 705, does not support the appellant's contention. In my opinion, this case is directly in point, the only difference being in the extent of the servant's authority to represent the master. Hines was the superintendent of agencies, and slandered Shumaker, and there was a peremptory instruction as to liability by the trial court, which was affirmed here. The law does not depend on whether the servant is one of limited authority, but whether he is acting within the limits of his authority in the furtherance of his master's business.

I think the judgment should be reversed, and the demurrer overruled.