### BROWN v. BOND et al.

(In Banc.  April 28, 1941.)

[1 So. (2d) 794.  No. 34467.]

James A. Cunningham, Sr. and James A. Cunningham, Jr., both of Booneville, for appellant.

I. L. Sheffield, of Fulton, and Floyd W. Cunningham, of Booneville, for appellees.

Argued orally by **James A. Cunningham**, for appellant, and by **I. L. Sheffield** and **Floyd Cunningham**, for appellees.

**Roberds, J.**, delivered the opinion of the court.

This suit was for damages for personal injuries to appellant, plaintiff below, caused him by the negligent operation of a truck.

He joined as defendants Earl Wileman, the driver of the truck, and Gilmore—Puckett Lumber Company, a corporation, and W. A. Bond and H. C. Bond, partners, as the employers of Wileman.

When plaintiff rested his case a motion to exclude the testimony which had been offered by plaintiff and to direct a verdict for Gilmore—Puckett and the Bonds was sustained as to the former and denied as to the latter.

When introduction of testimony both for plaintiff and defendants was concluded the court, on motion of the Bonds, granted a peremptory instruction to the jury to return a verdict for them, which was done, and on motion of plaintiff a mistrial was entered as to Wileman, and judgments were accordingly entered.

The peremptory instruction for the Bonds was granted on the theory that Wileman at the time of the accident was not about the business of the Bonds and was not acting within the scope of his duties as their employee and was not then their agent. The correctness of this ruling is the sole ground of this appeal. Appellant concedes that the ruling as to Gilmore—Puckett was correct and Wileman naturally has not appealed. Therefore, the only defendants concerned about this appeal are the Bonds. Hereafter when the word appellees is used it will mean the Bonds.

It is not necessary to a decision of the question under consideration that we detail the circumstances of the accident, except to say that it occurred about 8 o'clock on the night of August 30, 1937, on Highway No. 30, about 4 miles east of the City of Booneville in Prentiss County, Mississippi, and near the home of Wileman, while appellant and certain members of his family were riding in a truck going east and Wileman, driving a truck and trailer belonging to appellees, was traveling west to his home. This truck, so driven by Wileman, struck the plaintiff, badly injuring him, and the proof is ample to show that Wileman was negligent. Appellant contends Wileman was acting about the business of the Bonds and within the scope of his duties as their employee and that they are liable for his negligence. The Bonds say he was not so doing but that he was carrying groceries to his wife and going to his home to spend the night—purely private missions.

The Bonds owned a tract of timber located some 15 miles east of Booneville. On or near this they owned and operated a sawmill at which they sawed into rough

lumber the timber they were then cutting from this tract. This rough lumber they were hauling from this mill to Fulton, Mississippi, some 20 miles south of the mill. To move the logs to the mill they used logging trucks; to move the rough lumber from the mill to Fulton they used lumber trucks.

Hollis Bond, the son of W. A. Bond, the other partner, was in charge of operations. He lived in Booneville. Wileman then lived in Booneville. Wileman about June 1, 1937, approached Hollis Bond in Booneville seeking employment as a driver of a lumber truck. Bond told Wileman he would employ him at $2 per day but on the condition that Wileman would move to and live at the sawmill while he was driving the lumber truck, so that he would be conveniently available for work and so that his truck would not be driven about the country when not in use. This was a condition as to all employees. Wileman agreed to do that and the trade was made. Appellees delivered to Wileman a new Chevrolet truck—the same truck Wileman was driving at the time of the accident. Wileman, within two or three days, moved his family onto the Newt George farm, some 4 miles east of Booneville, where they lived until the accident happened. B. B. Wileman, father of Earl Wileman, began to operate a rooming and boarding house at the mill to accommodate the employees of the Bonds. Earl Wileman moved to his father's boarding house. Appellees had a rule that when all trucks were not in service they should be parked on the mill yard or at B. B. Wileman's, or such other place as appellees might designate. This was done by all drivers but appellant claims there was an exception as to Earl Wileman, as hereinafter set out, and except as to one Deaton, who lived between the mill and Fulton.

On the day of the accident Wileman had returned to the mill after his haul to Fulton and there was nothing else for him to do for his employer; his day's work was over. Appellees did not know he was driving the truck from the mill to his home, or that he was going home on

this occasion. The truck was empty. He was making this trip to deliver to his wife some groceries he had purchased the day before and to spend the night at his home.

The foregoing facts seem undisputed. But appellant contends that, notwithstanding these facts, appellees are liable to him because of circumstances now to be set out, which are both supported and denied by the evidence, but a peremptory instruction having been granted, we accept as to them, everything which the evidence establishes, either directly or by reasonable inference. Dean v. Brannon, 139 Miss. 312, 104 So. 173, 175; Bourgeois v. Mississippi School Supply Co., 170 Miss. 310, 318, 155 So. 209.

Appellant placed upon the stand as an adverse witness Earl Wileman, who gave testimony as to instructions given him by appellees pertaining to the care and safety of the truck. We quote part of that testimony:

"Q. You were instructed to keep that truck with you? A. Yes, to take the truck and take care of it.

"Q. And wasn't you directed to take that truck with you and look after it? A. Yes.

"Q. And wasn't you instructed to take the truck and keep close enough to it to take care of the equipment, the tires, and if the hood was raised you could hear it? A. Yes, I was to look after it.

"Q. And didn't he say he was going to hold you responsible and take care of the casings and tools and everything? A. There wasn't any tools.

"Q. What about casings? A. The casing was there.

"Q. Didn't he say he would hold you responsible for the truck and casings? A. I wouldn't say the casing, he just said see after it and see that nothing was stolen off it. . . .

"Q. When you come to stay with your wife under the instructions of these folks you parked your truck close to the house as you could get it? A. When I come I seen after the truck, yes.

"Q. And you were further instructed to keep up the repairs after the first thirty days ran out? A. I did some repairs.

"Q. Weren't you directed and when you came in after a load you were to keep up the truck and look after it? A. The only way was when it got out of shape and I could fix it I would do so.

"Q. Didn't you ever look after it and keep it from getting out of shape by looking after it and keeping the loose things in order? . . . A. There never was anything said more than the trade and I couldn't say for he didn't say any more about it.

"Q. But under the trade you were to keep it up and look after it? A. In what way?

"Q. Didn't he tell you to look after it and keep it in shape? A. Yes, told me to look after it and see to it."

Wileman also said that from the time of his employment to the time of the accident he drove the truck to and spent the night at his home a part of the time. He did not say just what proportion of the time but other witnesses estimated it at something like one-third of the total time. He did not know whether appellees knew he was doing this but he supposed they did, because his home was near the highway along which Mr. Hollis Bond passed back and forth from the mill to his home in Booneville and he had the truck parked at his home or at the home of Mr. Newt George, who lived nearer the public highway than Wileman did.

Wileman, when recalled to the stand, and on cross-examination by able counsel for appellant, said that shortly after he started to work he told Mr. Hollis Bond he was not going to stay all the time at his father's but that he was going home some of the time. We quote part of his testimony on this point:

"Q. You told the jury yesterday that when you hired to this man for that operation out there he told you he wanted you to stay there? A. Yes.

"Q. Didn't you go to him soon after your employment and while you were working for him in the presence of your father and Travis Crow didn't you go to him and tell him you were not going to stay out there all of the time, that you were going to stay with your wife part of the time? A. Yes.

"Q. And he told you that was all right, didn't he? A. Yes.

"Q. And he told you to take the car with you and look after it and not let any casings get stolen? A. I wouldn't say he said carry the truck with me.

"Q. You swore yesterday here that he told you to keep that truck with you everywhere you stayed? A. Yes.

"Q. When you told him you wasn't going to stay out there all the time that you were going home part of the time and stay out there part of the time, he didn't say anything to you about not keeping the truck with you? A. The only thing I can say that I wasn't going to stay at the mill I was going to stay with my wife part of the time and he said that was all right.

"Q. That was after he had instructed you fully to keep that truck with you all the time wherever you stayed. A. He told me to keep the key, not let anybody else drive the truck.

"Q. Didn't he tell you to take that truck and keep it with you so you could hear it if the hood was raised? A. I just wouldn't say as to that.

"Q. You admitted that here yesterday? A. I wouldn't say.

"Q. Isn't that a fact? A. I just wouldn't know how to answer that.

"Q. Will you say you told the truth yesterday when you say he said to keep the truck with you? A. I will say I told the truth as far as I remember.

"Q. And when you told the jury that he told you to keep that truck with you everywhere you stayed, did you tell the truth? A. Say that again.

"Q. To keep that truck and park it wherever you stayed so you could look after it? A. In a way he did.

"Q. You never did have a change on that order? A. No.

"Q. You kept that order up? A. Tried to, yes.

"Q. As long as you worked for him through the summer and fall months, as long as you worked, you kept that truck where you stayed? A. Yes, I generally stayed with the truck."

It is now apparent that appellant, to hold appellees liable under this record, must ground his right on the presumption of the proven facts and legal sufficiency of (1) permission of the master for the servant to use the truck to go on a private mission, or (2) that the transportation of the employee to and from his home was an ingredient and essential part of the contract of employment so as to impose upon the employer the duty to so transport him, or that this duty was undertaken by the master with the conscious purpose of enabling the employee the better to perform his duties, so that the servant, while being so transported, was yet in the service of the master, or (3) that the instructions as to care of the truck were of such nature and certainty and constituted such important and essential duties of the employee as to render the employee, while driving the truck to his home on a private mission, about the master's business.

The mere permission of the master for the servant to use his automobile in going to and from his meals or his home does not constitute the servant his agent, or render the master liable for his negligence, while so doing. 5 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., secs. 3041-3042; Berry on Automobiles (6 Ed.), sec. 1375, p. 1139; 5 A. J. Automobiles, sec. 379; Hamilton Bros. Co. v. Weeks, 155 Miss. 754, 124 So. 798; Geldnich v. Burg, 202 Wis. 209, 231 N. W. 624; Wilson v. Quick-Tire Service, 32 Ga. App. 310, 123 S. E. 733; Hartnett v. Gryzmish, 218 Mass. 258, 105 N. E. 988; Bloom v. Krueger,

182 Wis. 29, 195 N. W. 851; Calhoon v. D. C. & E. Mining Co. et al., 202 Mo. App. 564, 209 S. W. 318; Hill v. Decatur Ice & Coal Co., 219 Ala. 380, 122 So. 338.

On the second proposition, there is no dispute in this record that when Wileman was hired it was on the condition that he would stay at the mill. And no plausible contention can be made under the proof here that appellees were under any duty to transport him to and from his home, which at the time of the employment was at Booneville, some 15 miles from the mill, and at the time of the accident was some 11 miles from the mill. The most that can be said of the meaning of the subsequent conversation between Wileman and Hollis Bond, which Bond said never happened, is that Bond simply gave his permission that Wileman might go home at night some of the time and use the truck for that purpose. There is no reason whatever, apparent from this record, that Bond should have undertaken the transportation of Wileman to and from his home to spend the nights. Wileman sought the employment; Bond did not seek him and there is nothing in the record indicating he was an especially desirable employee—, the record indicates the opposite. There is no reason apparent why Bond, in addition to the regular wages paid for like services, would undertake to transport Wileman a distance of 20 miles to and from his home, with the expense, inconvenience and dangers incident thereto.

On the third proposition, it was natural the employee would be charged with the safety of the truck. But the charge was not as embracing and comprehensive as appellant contends. Wileman himself admits that part of the time when he went home that he parked the truck at the George home, too distant to protect it from his home. And it is a strained conclusion to say that because it was the duty of the driver to look after his truck and keep it from the hands of others that this was permission for the driver to take the truck with him wherever he might wish to go. It was the duty of the driver to stay near the

truck—the designated place for it to be parked. Wileman, when driving the truck home, was not staying with the truck; the truck was staying with him—not for the benefit of the truck but for the benefit of Wileman. Bond never designated that the truck should be parked at Wileman's house, some 10 miles from the mill.

Learned counsel for appellant cites among other cases: Primos v. Gulfport Laundry & Cleaning Company, 157 Miss. 770, 128 So. 507; Southern Bell Telephone & Telegraph Co. v. Quick, 167 Miss. 438, 149 So. 107; Slaughter v. Holsomback, 166 Miss. 643, 147 So. 318; Loper v. Yazoo & M. V. R. Co., 166 Miss. 79, 145 So. 743; Hand v. Industrial Life & Health Ins. Co., 174 Miss. 822, 165 So. 616; and Restatement of the Law of Agency and 39 Corpus Juris. These authorities, in our view, do not sustain his contentions, under this record.

In the Primos case the servant was about the dual purpose of his own pleasure and his master's business.

In the Quick case the servant deviated from the scope of his employment while on unfinished business of the master.

The Slaughter case involved mainly the instructions given by the master to the servant.

In the Loper case a fireman on a train ejected a trespasser from the tender of the engine. The Court held that this act in protecting the engine was incident to the duties of a fireman.

In the Hand case the Court held that an insurance agent's slanderous remarks about a competitor made while agent was soliciting applications were not made within the scope of the employment.

Restatement of the Law, Agency, p. 512, sec. 229, states this rule: "If the master supplies a servant with a vehicle in order that the servant may go to or from work, it is important to ascertain whether the vehicle is supplied primarily for the purpose of assisting the master's work or for the purpose of assisting the employee to perform what is essentially his own job of getting to or from

work. The mere fact that the employer supplies a vehicle does not establish that those who avail themselves of it are within the scope of employment while upon it, especially if the use is merely casual. On the other hand, the fact that the master contracts to supply a vehicle or that the supplying of a means of access to the work is one of the inducements to the employment indicates that the operation of the vehicle is part of the master's work. If employees are required to use a particular vehicle and particularly if they are paid while in it, it would ordinarily be found that the driver of the vehicle is acting as the employer's servant.''

These rules are especially applicable to the facts of the case at bar but they are against the contention of appellant.

39 C. J., p. 1282, sec. 1472, announces the rule: ''The primary test to determine the master's liability for the act of his servant under the doctrine of respondeat superior is whether the act was within the scope of his employment. The test is not the character of the act, nor whether it was done during the existence of the servant's employment; but whether the injury complained of was committed by the authority of the master expressly conferred or fairly implied in the nature of the employment and the duties incident to it. The master will be liable for the acts of the servant within the scope of the employment whether the acts are expressly or impliedly authorized.''

Going now to other authorities, 5 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., sec. 3041: ''In the absence of special and peculiar facts and circumstances affecting the relationship of the parties and the purposes to be served, as a general proposition, the servant, in going to and from his work in an automobile, acts only for his own purposes, and not for those of his employer, and consequently the employer is not to be held liable for an injury occasioned while the automobile was being so used.

"For example, where an employee works for another at a given place of employment, and lives at home or boards himself, it is the business of the employee to present himself at the place of employment, and the relation of master and servant does not exist while he is going between his home and his place of employment."

Again he says at page 200, sec. 3042: "Accordingly, the relation of master and servant must ordinarily be deemed suspended while he is going to and from his meals, particularly where the servant is to board himself, and, the master is not liable for the servant's negligence while so traveling to and from meals, although the servant is driving the master's machine."

In Bourgeois v. Mississippi School Supply Co., 170 Miss. 310, 319, 155 So. 209, this Court used this language: "At the most, viewing it in the most favorable light, this was a mere lending of the truck by nonaction on the part of the master to the two employes in order that they might accomplish purposes of their own, not incident, pertinent, or subordinate to their employment. So far as the record discloses, it was no part of, or incident to, their employment."

In Kish v. California State Automobile Ass'n, 190 Cal. 246, 212 P. 27, a servant who was employed to drive a motortruck and to put up road signs, and was permitted the use of the motortruck to go to his home for meals, was held not to be within the scope of his employment, when, after completing the day's work, he went home to clean up and then went down town for supper, during which time an accident occurred causing injury to a third person, notwithstanding the fact the employer authorized the driver to include the cost of his meals in his expense account.

In Cohen v. Fayette, 1924, 233 Ill. App. 458, the master was held not liable for an injury resulting to a third person, where the driver of the automobile, after returning the same to the master's garage from his day's delivery, took it and drove it to his home, where he had

dinner, and stayed there for about an hour, and then proceeded to return to the master's garage when the accident occurred.

An employee who was using his employer's motortruck in going to his home for lunch was held not to be using the truck within the scope of his master's business, thus relieving the master from liability for an injury caused by the negligence of the employee in the operation of the automobile while. returning to his master's place of business from his lunch, even though the servant used the truck with the assent of his foreman. Bloom v. Kreuger, 1923, 182 Wis. 29, 195 N. W. 851.

We will only add that in reaching the conclusion the appellees are not liable in this case we are greatly influenced by the fundamental and all-important fact that by no process of reasoning can it be seen, under the facts of this case, that Wileman, at the time of this accident, was engaged in doing anything which could have been of any benefit to appellees.

The lower court was correct in granting the peremptory instruction and the case is affirmed. Affirmed. .