LOLA MAGOUIRK *v.* WESTERN UNION TELEGRAPH COMPANY.

1. EVIDENCE.   *Habits of agent.   Use of intoxicants.   Fitness for position.*

   Evidence of the habits of the agent of a telegraph company as to the use of intoxicants, and of his demeanor when under the influence of drink, is admissible, as showing unfitness for his position, in a suit against the company for damages caused by the sending, through his agency, of a forged telegram.

2. TELEGRAPH COMPANY.   *Forged dispatch.   Injury to reputation.   Mental suffering.*

   The sending by a telegraph company of a dispatch, forged by its transmitting agent, purporting to be from an unmarried woman, addressed to an unmarried man with whom she was only casually acquainted, requesting him to meet her at a designated town, and the exhibition of the telegram by the agent, with boasting of having sent it, renders the company liable to the woman for damages for the mental suffering caused by the resultant injury to her reputation, the acts of the agent being within the scope of his business.

FROM the circuit court of Jones county.

· HON. JOHN R. ENOCHS, Judge.

Appellant, Miss Magouirk, who was plaintiff in the court below, brought this suit against the Western Union Telegraph Company, defendant there, to recover damages alleged to have

been caused by the sending of a dispatch over the company's wires, which is averred in the declaration to have been a bogus telegram, forged by one Cooper, an agent of the company. The dispatch complained of is as follows:

"To Mr. Gann, Ellisville: Be sure to go to Heidelberg. Am on excursion. Lola Mc."

The plaintiff was an unmarried woman, and the telegram was by the company's agent at Ellisville, in due course, delivered to Mr. Gann, who was an unmarried man, with whom plaintiff had only a casual acquaintance. Cooper, after sending the dispatch, openly and publicly boasted of having sent it, and paraded its contents to the public. At the trial of the case in the court below the following question was asked a witness by counsel for plaintiff: "State whether or not Cooper at this time —at the time of sending this telegram—was a man given to drinking excessively, and whether or not he was a man that was boisterous and rough in his general deportment." To which the witness answered: "Mr. Cooper drank frequently. While he wasn't drinking he was a peaceable and quiet man. While he was drinking he was one of the boys." This question and answer were, on motion of defendant, excluded by the court, and, after all the evidence for plaintiff was in, a peremptory instruction was granted for defendant. From the judgment of the court below, in defendant's favor, the plaintiff appealed to the supreme court.

*Shannon & Street* and *A. S. Bozeman,* for appellant.

The excluded testimony relative to the agent's habits was competent, as tending to show the telegraph company had contributed to the wrongful act by placing in a position of trust a man of vicious habits and one likely to do the very act complained of. *Railroad Co.* v. *Patton,* 31 Miss, 156.

This is not an action for negligence of the agent, but an action for a willful wrong; and, although this court has declined to follow the decisions of many other states holding that damages for

mental suffering alone are recoverable in actions for mere negligence, where no physical injury is suffered, still, it has affirmed the rule that damages for mental suffering alone are recoverable in cases of willful wrong, especially those affecting the liberty, character, reputation, personal security, or domestic relations of the injured party. *Telegraph Co.* v. *Rogers,* 68 Miss., 756.

It is the settled law in this state, since the decision of this court in *Richberger* v. *Express Co.,* 73 Miss., 161, that the master is liable for the willful acts of his servant done in the master's business. By the masterful opinion of the court in this case, by Justice Whitfield, the old doctrine of *McManus* v. *Crickett* is repudiated; our own earlier cases of *McCoy* v. *McKowen,* 26 Miss., 487, and *Railroad Co.* v. *Harrison,* 48 Miss., 112, are overruled, and the true test of the master's liability is stated to be "not whether the tort was committed in pursuance of orders from the master, or against orders; whether the master ratified or not, whether the tort was willful and malicious or not, but whether, and solely whether, the act constituting the tort was done in the master's business.." Measured by this test, the appellee is liable for the writing, sending and delivery of the false message.

The case at bar is not to be differentiated from the Richberger case, as was the case of *Canton Co.* v. *Pool,* 78 Miss., 147; but the opinion in that case rather confirms the analogy between the Richberger case and the case at bar. For, in the case at bar, the appellant was engaged in business with the appellee when the tort was committed. She had gone there not for pleasure or idle curiosity, but to send a telegram, for the transaction of business, and there can be no logical separation between the sending of the true message and the forged message, both being sent at the same time and each being a duplicate of the other except as to the addressee. *Bank of Palo Alto* v. *Pac. Post. Tel.-Cable Co.,* 103 Fed. Rep., 841, where the telegraph company was held liable for a false message concocted and transmitted by its agent for its own benefit, the court citing

in support of its decision the cases of *Reynolds* v. *White,* 13 S. C., 5; *Dougherty* v. *Wells,* 7 N. W., 368; Cooley on Torts (2 ed.), 620.   Upon the undisputed facts in this case not only willful wrong, but a very great wrong, was done the appellant by the servant of the appellee.   Here we have a young lady, unmarried, away from her kindred, earning her own living in the little town of McHenry.   She goes to the office of appellee and sends a telegram to a friend.   In this she is forced to deal with the operator, Cooper, whom appellee had placed in charge of its office at that place.   Cooper, inspired by the occasion and the visit of appellant to the office of appellee, writes and sends a false message, purporting to come from appellant, to an unmarried man, a mere casual acquaintance of appellant, residing at her former home, and sent it "collect," making the young man pay the charges, and urges this casual acquaintance to meet her, a young woman, at another town, where she was going on an excursion.   This was a great outrage upon propriety and decency and upon the reputation and character of this young woman.   Its necessary effect was to drag her good name into the mire; to discount her womanly modesty; to put her in the attitude of seeking, almost publicly, the attention of young men who barely knew her; to expose her to the biting tongue of gossip, and to place her in a position inviting attacks upon her chastity.   There can be no greater wrong and no more insidious injury perpetrated upon a young woman, unmarried and battling for herself against the world, than to cast suspicion upon her character or reputation, and for this willful wrong done her, this vicious and indecent treatment of its customer and patron, the appellee should be held liable.

*Mayes & Harris,* for appellee.

This case comes within the principle of *Canton Co.* v. *Pool,* 78 Miss., 147.   It is another case where a foolish employee undertook to play a practical joke.   Of course, such conduct is reprehensible, but it is clear that Cooper was not engaged in his

master's business in sending this telegram to Gann, and the mere fact that he used the instrumentalities of the telegraph company by which to effectuate his foolish prank cannot impose liability upon the company. The undisputed testimony in this case, and plaintiff's own testimony at that, shows that the occurrence took this shape: The plaintiff got on the train to leave. She had not been to the telegraph office, nor had she written and delivered any telegram for transmission. In the act of getting on the train she requested the telegraph operator, who was out on the platform or at the door, to send a certain telegram for her, stating that when she got back she would pay for it. In adopting these means to get off her telegram, plaintiff adopted this man, Cooper, as her own agent to write it out and place it in the telegraph office for transmission. The reduction of the message to writing and the transmission of the same was, therefore, the act of her agent, and if he took the liberty to send two messages instead of one, it was the wrongful act of her own agent, and not that of the company's. It was not his duty to write out and deliver telegrams to be sent, and she must be held to have known the fact. *Sevier* v. *Railroad Co.*, 61 Miss., 8; *Telegraph Co.* v. *Edsall*, 63 Texas, 668; *Telegraph Co.* v. *Foster*, 64 Texas, 220.

The plaintiff's own testimony shows that no legal injury was inflicted upon her. The suffering of which she speaks was mental entirely, and was abnormal and due to an unnecessary and unreasonable sensibility.

WHITFIELD, C. J., delivered the opinion of the court.

The testimony as to the habits of the telegraph operator was addressed, as we understand it, to his fitness and suitableness for the place he held, and in that view should have been admitted. *Railroad Co.* v. *Patton*, 31 Miss., 156; 66 Am. Dec., 552. This case falls squarely within the case of *Richberger* v. *Express Co.*, 73 Miss., 161 (18 So. Rep., 922); 31 L. R. A., 390; 55 Am. St. Rep., 522. It is wholly unlike *Canton Co.* v. *Pool*,

78 Miss., 147 (28 So. Rep., 823). The appellant was at the telegraph office about the business of that office. What the agent did was in the very line of his business—sending telegrams. In *Canton Co.* v. *Pool* the appellee was not at the place of business about the making of ice. This is not a case like *Telegraph Co.* v. *Rogers,* 68 Miss., 756 (9 So. Rep., 823); 13 L. R. A., 859 (24 Am. St. Rep., 300). That case simply held that in an action for mere negligence no recovery could be had against a telegraph company where only mental anguish, disconnected from any physical suffering, was involved. With that doctrine we have nothing to do in this case, and we say nothing about it now. That case itself gives three classes of cases wherein damages for mental suffering may be recovered. See pages 756, 757, 68 Miss.; page 825, 9 So. Rep.; page 862, 13 L. R. A., and page 305, 24 Am. St. Rep., and the third is "cases of willful wrong, especially those affecting the liberty, character, reputation, personal security, or domestic relations of the injured party." This case falls within that class.

*Reversed and remanded.*