INTERSTATE Co. *et al. v.* JOLLY.

(Division B. Jan. 6, 1930. Suggestion of Error Overruled Feb. 3, 1930.—125 So. 838.)

[125 So. 406. No. 28290.]

Boothe & Pepper and Ruff & Johnson, all of Lexington, May, Sanders, McLaurin & Byrd, of Jackson, and Grant I. Rosenzweig, of Kansas City, Mo., for appellants.

P. P. Lindholm, of Lexington, and **Holmes & Holmes**, of Yazoo City, for appellees.

**Anderson, J.**, delivered the opinion of the court.

The appellee, Zelma Jolly, a minor, by her next friend, E. P. Smith, brought this action in the circuit court of Holmes county against the appellants, the Interstate Company, a foreign corporation, and Romeo Favretto, a resident of said county, for slander, and recovered a judgment in the sum of twenty-five thousand dollars, the amount sued for. From that judgment, appellants prosecute this appeal.

The facts in this case are, in all respects, substantially the same as were the facts in the case of Interstate Co. et al. v. Garnett (Miss.), 122 So. at pages 373 and 756, there being two opinions, one delivered by the court on the first hearing, and the other on suggestion of error.

The grounds relied on for reversal of the judgment in the present case, with one exception, which will be later considered, were the same grounds relied on for reversal of the judgment in the Garnett case. With much force and show of reason the appellants attack the decision in the Garnett case as unsound, and ask the court to overrule it.

After carefully and diligently reconsidering every question decided in that case, we are unwilling to overrule it. We are unable to see that the case lays down principles which will be mischievous and harmful.

The question raised in this case by the appellants which was not involved in the Garnett case is this: Whether, where one plaintiff has recovered punitive damages against a defendant for a tort, another plaintiff injured by the same tort will be permitted to recover

punitive damages against the same defendant. The appellants contend he will not, and this contention arises out of the assumption, by the appellants, that the appellants in the present case are identical with the appellants in the Garnett case; that the Zelma Jolly referred to in the evidence in the Garnett case is the same person as the appellee in this case; that the Lelia Garnett referred to in this case is the same person as the Lelia Garnett in that case, and other facts, shown by the evidence in the Garnett case, including the recovery of, and payment by, the appellants of a judgment in the sum of fifteen thousand dollars, largely for punitive damages. The appellants base this contention on the principles declared in the case of Neal v. Newburger (Miss.), 123 So. 863, and the cases cited in the opinion in that case; that punitive damages are not an award for the benefit of a particular party injured as a matter of right, but upon the principle that such damages may have a deterrent effect and protect the public against a repetition of similar torts; that punitive damages are punishing damages, and are awarded to an injured party as a reward for his public service in bringing the wrongdoer to an accounting. Invoking these principles, the appellants argue that they were punished in the Garnett case in the sum of fifteen thousand dollars for the same wrongful act of which the appellee in this case complains, and which was the basis of the appellee's recovery of punitive damages. Appellants say, therefore, if the judgment in this case is permitted to stand, the appellants will be subjected to double punishment for the same tort.

We do not decide this question, because, on the record in this case, it is not presented for decision; the necessary facts above set out, assumed by the appellants to exist, not being in the record. Nor will the court take judicial notice of the facts shown in the Garnett case, and by that means treat them as facts in this case. Ill. Cent. R. Co. v. Walker, 116 Miss. 431, 77 So. 191. It is

true that, in deciding a present case, the supreme court will take judicial notice of its former decisions and the facts upon which they were based in order to determine whether the principles of law therein declared are applicable to the case in hand, but it will not take judicial notice of facts upon which its former decisions were based to the extent of recognizing them as facts in the case under consideration.

In this case, as in the Garnett case, the trial court overruled a motion for a new trial on the ground that the verdict was excessive. In the Garnett case the judgment was reduced from twenty-five thousand dollars to fifteen thousand dollars. We are of opinion that the judgment in the present case is so large as to evince passion or prejudice on the part of the jury in rendering their verdict. For that reason alone the judgment is reversed, unless the appellee, within ten days from the day on which this opinion is handed down, will enter a remittitur of ten thousand dollars. Upon entering such remittitur, the judgment will stand affirmed, otherwise it will be reversed, and the case remanded to be tried alone on the issue of damages.

Affirmed, with remittitur.

### On Suggestion of Error.

**Griffith, J.,** delivered the opinion of the court on suggestion of error.

(Specially concurring.) The court upon a reconsideration of this case in response to the suggestion of error directs that the suggestion be overruled without comment, in so far as the court is concerned, beyond what was said in the original opinion.

In view of the fact that in affirming this case as to liability, we have followed the decision of the court heretofore rendered by Division A in Interstate Co. v. Garnett (Miss.), 122 So. 373, 756, 63 A. L. R. 1402, respecting which decision there has been in the present case a most earnest and forceful argument for the over-

ruling of the cited case, I desire to avail of the privilege, speaking for myself alone, to state my own reasons for my concurrence in the original decision and in the decision in this case, and for my opposition to any suggestion for the overruling of either of the opinions heretofore rendered in these cases, and to set at rest any supposition, if such there be, that the original opinion of three members found in 122 So. 373, has not had the full approval of a majority of all the members of this court.

It has been earnestly pressed upon us in the present case that the opinion first cited, on the principal point therein decided, places this court out of line with the uniform course of the common law as declared in the overwhelming weight of authority throughout this country. It is the argument that no special damages may be recovered for slander unless the words used impute crime or unchastity, and that to call a decent woman a ''bitch'' imputes neither.

It is the duty of this court to ascertain for itself and to declare, by virtue of its constitutional obligations to its own people, what is the common law of this state. In the discharge of this duty, when there is no express decision in this state, the court looks to the decisions of other states as one of the chief guides in ascertaining what the common law is; but these are neither the sole guides nor are they controlling upon us. There is no doubt that in this day and time no lawyer can be safe and no judge sound unless he has the inclination and the industry to search the books, and the learning and capacity to understand and apply what he finds in the books; but there is such a thing as placing the nose so far into the books as not to see what it is of which the books are made. The common law is not made by the books, but the common law makes the books. There is coming more and more to be understood, as the study of law deepens, that the common law is not made by decisions, although reflected, or in a sense authenticated,

thereby; but that the common law has its real foundations in those standards of right and justice which have become fixed in the reasonable, well-established, and generally observed customs and usages of all the people of the state. It is the duty of the court to know these universal state-wide customs and to declare the common law in accord therewith. When the court declares otherwise, it no more states the common law than it would state the statutory law in mistakenly recognizing an unconstitutional statute; it would be only a mistaken declaration, not the law of the land.

According to the uniform, universal, and established customs and social usages among our people, there is nothing better understood, and which shall be required to be the more strictly observed, than that no member of our social group shall say of a male member of the community that the latter is a "son-of-a-bitch." It is universally recognized as the supreme insult, and whenever the party so insulted is physically able to resent it by physical combat that recourse is instantly resorted to, save perhaps only in rare instances. Likewise it is the supreme insult to say of a woman that she is a "bitch," and it is the more condemned because of the physical defenselessness of the woman.

Since the said offenses are uniformly condemned, under our standards of right and justice, as civil wrongs and are universally resented, under the customs of our people, as deeply hurtful, upon what reason then is there an attempted qualification that they shall not be actionable because, as contended, there is no imputation of unchastity or crime, and where is the warrant, so far as the common law of our state is concerned, for any such a fictitious qualification? There is no reason growing out of practical or politic considerations; indeed, those considerations on account of the tendency to provoke violence, if there were no legal recourse, would be in favor of civil judicial relief. I therefore fully concur with the original decision, and for the reasons briefly

stated I think that it would well have rested on wider grounds than that availed of in the opinion in that case.

The matter of the amount of the verdict, which, even as reduced by us, may seem beyond all sense or reason, can be placed on similar broad ground. It is perhaps not to be claimed that our state has any higher regard for womanhood than other states in this section of our common country, but it is true that in respect to the rights of women in business we have taken rank in the forefront. Mississippi was the first state to grant absolute independence to women in the matter of property, and it has been for some time a fixed and vital principle among us that our women shall be permitted to enter all suitable lines of business employment, and that nothing shall be done which shall in the least humiliate or degrade any woman because she works as a business employee. These were the considerations in the minds of the members of the jury in this case, and it was their purpose to say to this employer and to all other employers that they shall not insult their women employees nor look down on them because they happen to be workers. And they intended to say it in terms loud enough to be well understood, as it is to be hoped it will be well understood henceforward among all who come into the state to do business here.

Suggestion of error overruled.