HOUSTON v. OPPENHEIM et al.

(Division A. Jan. 9, 1933.)

[145 So. 339. No. 30335.]

Rush H. Knox and Harry M. Bryan, both of Jackson, for appellant.

R. B. Ricketts and Franklin, Easterling & Rosenthal, all of Jackson, for appellees.

Argued orally by **H. M. Bryan**, for appellant, and by **Simon Rosenthal** and **R. B. Ricketts**, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This is a suit for defamatory statements made to, and of, the appellant by a servant of the appellees.

The declaration alleges, in substance, that: The appellees are copartners engaged in the mercantile business, conducting a mercantile establishment known as the "Miracle Store," of which H. M. Loeb was employed by them as general manager, having authority, among other things to employ and discharge salesmen. The appellant, a woman, was one of the saleswomen in the Miracle Store, and on one occasion Loeb, "who was then and there acting within the scope of his authority and employment as agent and manager of the" appellees' store, and "in the performance and discharge of his duties as manager for and on behalf" of the appellees, said to, and of the, appellant, in the presence of others: "If you are not putting out, you'd better take your damned sign down," and "If you do as I say, and go with me to the hotel, everything will be pretty and lovely, and if you don't, you'll be damned sorry, for I'm the guy that's running this store," intending, according to the declaration, to charge the appellant with being a lewd woman, and to make an improper proposal to her. A demurrer to the

declaration was sustained, and, on the appellant's declining to plead further, the cause was dismissed.

The authority delegated to Loeb by the appellees did not expressly include the making of defamatory statements. They are therefore not liable therefor, unless their making was incidental to the discharge by Loeb of a duty he owed the appellees within the scope of his employment. Section 454, Am. I. Restmnt. Law of Agency, Tent. Draft, No. 5, which authority is here in accord with all of our former decisions.

The declaration does not allege that Loeb was discharging such a duty when he made the defamatory statements, but, on the contrary, it is clear therefrom that he then had no purpose of furthering any interest of the appellees, but had turned aside from his master's business, in the classic phrase of Baron Parke, in Joel v. Morrison, 6 C. & P. 501, to "engage in a frolic of his own." It is true that the statement included a veiled threat, we will assume, to discharge the appellant unless she complied with the request Loeb made of her, but the request had no relation to the appellees' business.

The appellant relies on the following cases: Richberger v. American Express Co., 73 Miss. 161, 18 So. 922, 31 L. R. A. 390, 55 Am. St. Rep. 522; Magouirk v. Western Union Telegraph Co., 79 Miss. 632, 31 So. 206, 207, 89 Am. St. Rep. 663; Interstate Co. v. Garnett, 154 Miss. 325, 122 So. 373, 756, 63 A. L. R. 1402; Interstate Co. v. Jolly, 156 Miss. 199, 125 So. 406 and 838; Buchanan v. Telegraph Co., 115 S. C. 433, 106 S. E. 159, 18 A. L. R. 1414; Stone v. William M. Eisen Co., 219 N. Y. 205, 114 N. E. 44, L. R. A. 1918B, 291. These cases are not in point. One difference between them and the case at bar is that in the latter the injury was inflicted by the servant upon another of the master's servants, while in the former it was inflicted on a third person not connected with the master's service.

In the Richberger case an assault was made by a servant of a public service company at its place of business on a person who was there on business with the company, to be attended to by the servant who assaulted him, and, in addition, the assault in time, space, and cause was so closely connected with the business of the company which the servant was then, or had been, transacting with the person assaulted as to be practically a part of it.

In the Magouirk case, a telegraph company was held liable for the act of one of its telegraph operators in sending over its wires a telegram which the operator had forged. The sending of telegrams was, as expressly there stated, ''in the very line of his [the operator's] business.'' In the Garnett and Jolly cases, the servant made the defamatory statements in the course of, and to effectuate, the discharge of one of the duties he owed the master; i. e., preventing the master's servants of and to whom the defamatory statements were made from disturbing the master's customers then in and about his place of business.

In the Buchanan case, decided by the Supreme Court of South Carolina, the insult complained of was inflicted by a messenger of a telegraph company in the home of the woman insulted while the messenger was delivering a telegram which the company had for her. That case seems to be without a brother. Note thereto in 18 A. L. R. p. 1416. Moreover, the court said that the same rule would there apply as would have applied had the insult been inflicted at the telegraph company's place of business. This rule, whatever it may be, has no application here.

In the Stone case, decided by the Supreme Court of New York, the master was engaged in the business of fitting and selling braces or appliances for the care, cure, and correction of defects and injuries to a person's feet. The woman insulted applied to the master for such a

brace, and he directed one of his servants to fit her with one. In order to do this, it was necessary for the servant to conduct her to a private room, and for her to there recline upon an operating table and bare or expose her lower limbs. When she did this, the servant "began rubbing and feeling her lower limbs and the lower portion of her body," and attempted to have sexual intercourse with her. The court held that, the woman having placed herself under the protection and control of the master, he owed her, under the peculiar circumstances of the case, the duty of treating her with decency and respect, which duty the master had delegated to the servant and which he violated.

Affirmed.