JUDITH LAFONTAINE *v.* FAMILY DRUG STORES, INC.

COURT OF COMMON PLEAS    GEOGRAPHICAL AREA NO. 17
FILE NO. CV 17-708-8810

Memorandum filed April 5, 1976

*Howard R. Steeg,* for the plaintiff.

*Wilson, Asbel & Channin,* for the defendant.

SATTER, J. The defendant moved, after all the evidence was in, for a directed verdict. The trial court reserved decision and permitted the case to go to the jury. The jury returned a verdict in favor of the plaintiff on both counts alleged in the complaint for $8000, which was reduced by the court to $7500 in accordance with the ad damnum clause. The defendant timely moved to set aside the verdict on the grounds that it was contrary to the law, against the evidence and excessive, and moved for judgment notwithstanding the verdict. This memorandum decides those motions.

The plaintiff's complaint alleges two causes of action, the first, an invasion of privacy, and the second, negligence, based on essentially the same facts. In weighing the evidence most favorable to sustaining the verdict; *Kirby* v. *Zlotnick,* 160 Conn. 341; *Terminal Taxi Co.* v. *Flynn,* 156 Conn.

313; Maltbie, Conn. App. Proc. § 189; the jury could have found the following facts: The plaintiff's mother, Mrs. Lydia Mills, telephoned the defendant drugstore and spoke to its pharmacist, Ronald Schlank. She told him that her brother, Irving Maschietti, had a diet pill prescription for escatrol filed in his name at the pharmacy. She gave the number of the prescription and told the pharmacist that her daughter, Judith LaFontaine, the plaintiff, would come to pick up a refill. Escatrol is a controlled drug within the meaning of § 19-450a of the General Statutes.

After the call from Mrs. Mills, Schlank obtained the prescription from his file, noticed that it was a carbon duplicate, and became suspicious. He testified that the basis of his suspicion was § 19-457 (b) of the General Statutes which prohibits his filling a carbon copy of a prescription. He called the prescribing physician, William Macaulay, and asked him, not whether he had a patient named I. Maschietti, the name on the prescription, but rather whether he had a patient named Judith LaFontaine, the plaintiff. Macaulay said that he did not have such a patient. Schlank asked Macaulay whether he should fill a carbon copy of a prescription for the particular drug and Macaulay said, "Under no circumstances."

Schlank's suspicion was further aroused by several other factors. First, it appeared to him that the name of Mr. Maschietti, the name and dosage of the drug, and the signature of Macaulay had each been written in a different handwriting. Second, while in Schlank's experience escatrol was ordinarily prescribed in units of 30, the prescription called for units of 100. Third, the drug was prescribed, not, as Schlank thought was usual, in capsules, but rather in tablets. Schlank did not relate any of those grounds for suspicion to Macaulay.

Rather, Schlank called the Bristol police and notified them of his belief that the plaintiff was on her way to the store to purchase a controlled drug based on a forged prescription. When the plaintiff arrived and asked for her uncle's prescription, Schlank refused to give it to her. As she left the store, waiting police officers arrested her and charged her with the felony of obtaining a controlled drug by forged prescription.

The plaintiff was fingerprinted and photographed for mug shots and jailed. Her arrest was reported on the radio and in the Hartford and Bristol newspapers. Subsequent to her release, and as a result of the media publicity, she was harassed by telephone calls to her home and embarrassed at work. Her children were tormented by their classmates because of their mother's arrest. The charges against her were eventually nolled by the prosecutor on the grounds that the facts were insufficient for prosecution.

In fact, all of Schlank's suspicions regarding the prescription and the actions of the plaintiff were groundless. Macaulay testified that (1) he had issued the particular prescription in defendant's file to his patient, I. Maschietti; (2) the entire prescription was in his handwriting, except for the address of Maschietti which he customarily failed to fill in, and the prescription was not a forgery; (3) he did prescribe the drug in units of 100 and did not consider the number excessive when a patient did not wish to or could not go to the drugstore frequently; (4) he customarily did prescribe the drug in tablets rather than capsules; (5) he had issued an original and a carbon copy of the prescription because the patient needed the copy to get reimbursement from the state welfare department.

The jury could further have found that Schlank failed to exercise reasonable care in the following particulars: (1) in asking Macaulay about a prescription in the name of the plaintiff, who was clearly not Macaulay's patient, rather than inquiring about a prescription in the name of Maschietti, who was Macaulay's patient and whose name was clearly on the prescription; (2) in not inquiring of Macaulay the reason for the existence of the carbon copy of the prescription which was in the defendant's file and had been filled at least once before; (3) in not relating to Macaulay the grounds for his suspicion that the prescription was forged.

There was, however, no evidence that Schlank did not honestly believe that the plaintiff was about to commit a crime; there was no evidence that Schlank acted on the basis of any malice toward the plaintiff or for any purpose other than to bring the plaintiff to justice; and there was no evidence that Schlank demanded or pressured for the arrest of the plaintiff or did anything other than relate his suspicions to the police.

The issue before the court on the motions presently presented is whether the plaintiff, based on the foregoing facts, proved a cause of action under either count alleged in the complaint which would allow the verdict to stand.

# I

### CAUSE OF ACTION OF INVASION OF PRIVACY

This action is now recognized in all but two or three states; Prosser, Law of Torts (4th Ed.) § 117, p. 804; and it is firmly expressed in the Restatement, 4 Torts § 867. Prosser has best delineated the types of invasion of privacy which give rise to the cause of action. These are: (1) appropriation of the plaintiff's name or likeness for the defendant's benefit or advantage; (2) intrusion upon the

plaintiff's solitude or seclusion; (3) public disclosure of private facts about plaintiff; and (4) publicity which places the plaintiff in a false light in the public eye. Prosser, op. cit., pp. 802–18.

The Connecticut courts have found the cause of action properly alleged or proven in four cases. *Korn* v. *Rennison,* 21 Conn. Sup. 400, overruled a demurrer to a complaint alleging the publication of plaintiff's photograph for commercial advertising purposes (falling within Prosser category No. 1 above). *Steding* v. *Battistoni,* 3 Conn. Cir. Ct. 76, upheld a jury's verdict in favor of the plaintiff in an action in which the defendant unauthorizedly instituted a lawsuit in the plaintiff's name (also falling within Prosser categories Nos. 1 and 4 above). *Carey* v. *Statewide Finance Co.,* 3 Conn. Cir. Ct. 716, overruled a demurrer to the complaint alleging the defendant harassed and annoyed the plaintiff by numerous telephone calls for the payment of a debt which she did not owe (falling within Prosser category No. 1 above). *Prystash* v. *Best Medium Publishing Co.,* 157 Conn. 507, refused on procedural grounds to rule on the adequacy of a plaintiff's verdict derived from the defendant's publishing the plaintiff's photograph in connection with a news story concerning the commission of a felony by another woman (falling within Prosser category No. 4 above).

In the present case, for the plaintiff to recover, she had to establish that the defendant either publicly disclosed a private embarrassing fact about her or created publicity which placed her in a false light.

The facts are that the defendant's pharmacist made two private telephone calls: one to the prescribing doctor for the purpose of checking on the authenticity of the prescription and one to the

Bristol police conveying his suspicion that the plaintiff was about to commit a crime. Neither telephone call was made in a loud or public manner so as to be overheard by others. Thus, this case is distinguishable from *Bennett* v. *Norban,* 396 Pa. 94, in which a store manager ostentatiously searched the plaintiff for purported stolen merchandise in a public street outside the store.

The telephone call to the doctor did not cause the plaintiff the embarrassment and humiliation complained of because there is no evidence that the doctor related the call to anyone else or that he himself conveyed any scorn to the plaintiff. The telephone call to the police likewise remained private. It did, of course, lead to the plaintiff's arrest which gave rise to the publicity over the radio and in the newspapers. That publicity caused the embarrassment and the humiliation complained of.

For the plaintiff to recover against the defendant, however, she must show that the defendant caused the publication of the private facts about her. There is no evidence that defendant or its agents notified the radio station or the newspapers of her arrest or did anything to induce the media to publicize the arrest. Moreover, once the actual arrest occurred, the facts related to it were no longer private and they became part of the public record. A person charged with the violation of the law loses her right of privacy regarding that matter. See note, "Waiver or Loss of Right of Privacy," 57 A.L.R.3d 16, 75.

Despite the fact that the defendant did not directly publicize the private facts about the plaintiff, can a cause of action for invasion of privacy lie when publicity was a natural and foreseeable consequence of the defendant's agent mistakenly complaining to the police? This court believes not.

The gravamen of the action of invasion of privacy, on the grounds herein under discussion, is and should remain publication by the defendant. To allow the cause of action to be premised on any conduct of the defendant which could foreseeably result in media publicity putting the plaintiff in a bad light, would expand the concept of invasion of privacy beyond manageable limits. The plaintiff has not cited a case so holding nor has diligent research revealed one. If the cause of action were to be so expanded by this court, it would encompass virtually every tort. Publication by the media should be deemed to be independent of the defendant's conduct and the defendant should not be held responsible for it, even though it may be foreseeable, unless the defendant himself has contacted the media and created, induced or contributed to the news stories. There is no evidence to that effect in this case.

For the foregoing reasons, the court concludes that the plaintiff has failed to prove, as a matter of law, the cause of action of invasion of privacy.

## II

### CAUSE OF ACTION IN NEGLIGENCE

Although the plaintiff essentially is claiming damages resulting from a groundless arrest, she has chosen not to allege or to endeavor to prove the traditional action of malicious prosecution.[1] Rather, she has sought to recover in an action in negligence.

*Collins* v. *City National Bank & Trust Co.,* 131 Conn. 167, would appear at first blush to support

---

[1] The elements of that action are that a criminal proceeding was instituted by the defendant against the plaintiff, that the proceeding terminated in favor of the plaintiff, that the defendant lacked probable cause for initiating the proceeding, and that the defendant acted with malice. *Fatone* v. *DeDomenico,* 161 Conn. 576; *Zenik* v. *O'Brien,* 137 Conn. 592; Restatement, 3 Torts § 653.

the plaintiff. In the *Collins* case the plaintiff was arrested for obtaining money under false pretenses as the result of the defendant bank erroneously refusing to honor plaintiff's check and stamping it "no account." The plaintiff was locked in a cell, fingerprinted and subjected to the abuse and humiliation similar to that suffered by the plaintiff in the present case. The plaintiff in *Collins* sued the defendant bank in negligence and the jury returned a verdict in his favor. Our Supreme Court upheld the verdict.

The *Collins* case is analogous in a number of particulars to the present case. The head bookkeeper in the *Collins* case failed to use reasonable care in stamping the plaintiff's check in the same manner that the pharmacist Schlank was mistaken in his suspicion that the plaintiff was about to commit a crime. Both the bookkeeper in the *Collins* case and the pharmacist in the present case knew or should have known that their actions would lead to the plaintiff in each case being arrested and suffering the damages which in fact he and she did suffer. The Supreme Court in the *Collins* case also found that the arrest by the police was neither a supervening nor an intervening force which broke the causal connection or proximate cause between the defendant's negligent act and the plaintiff's injury. Id., 171.

There is, however, a critical difference between the two cases. The plaintiff in the *Collins* case was the depositor of the defendant bank and by reason of that relationship the bank owed the plaintiff a duty to use reasonable care to determine the status of the depositor's account. The breach of that duty constituted the actionable negligence on which the plaintiff could recover. The square holding was expressed by the Supreme Court as follows: "Negligence is a breach of duty. A primary duty of a

commercial bank to its depositors is to honor the latter's checks when they are good; 9 C.J.S. 684, § 342; before refusing to do so, it should use reasonable care to ascertain whether the depositor has an account with it." Id., 170. The question before this court is whether on the facts in the present case there was a duty of reasonable care owed by the defendant to the plaintiff.

Clearly, there is that duty when a private citizen makes a private arrest of another citizen by detaining or confining him. Recovery may be had in an action for false imprisonment when the arresting citizen has made a mistake, even if it is an honest one. "The reason is that he has no public responsibility; there is less necessity for such arrests, and more occasion to deter private citizens from taking the law into their own hands." Prosser, Law of Torts (4th Ed.) § 17, p. 100.

Likewise, there may be a duty on the part of a citizen to use reasonable care to ascertain the true facts when he insists upon, demands or pressures the police to make an arrest. In those circumstances, conjecture or suspicion is insufficient and sincere belief must be based on circumstances which make it reasonable. *Zenik* v. *O'Brien,* 137 Conn. 592, 597. It must be emphasized that in those cases sounding in malicious prosecution the essential element is the defendant's instigation of the criminal prosecution against the plaintiff. Thus, in *Zenik* v. *O'Brien,* supra, the defendant absolutely insisted on the plaintiff being put under arrest even though the arresting police officer was reluctant to do so. The court noted: "It was the defendant who, by insistence, set the criminal law in motion. This fact was ample to render him responsible for instigating the proceeding." Id., 596; see also *Rizza* v. *Gill,* 24 Conn. Sup. 256, 1 Conn. Cir. Ct. 544, and Restatement, 3 Torts § 653.

The honesty and sincerity of the defendant's belief that the plaintiff committed a crime may be vitiated by the presence of malice, as where the defendant sought to use the criminal process for a purpose other than to bring the plaintiff to justice. See Restatement, 3 Torts § 653 (1) (a) (ii). In *Rizza* v. *Gill,* supra, the defendant was held liable in malicious prosecution for having the plaintiff arrested in order to collect a bill despite the police promptings and warnings that the prosecution was groundless.

The facts in the present case are that the defendant's pharmacist did not instigate the criminal proceeding against the plaintiff and did not act from malice. He simply informed the police of his honest belief, based on the carbon copy of the prescription in the file which he felt violated § 19-457 of the General Statutes, that the plaintiff was about to commit a crime. His failure to exercise reasonable care in arriving at that belief by not making proper inquiries of the prescribing physician does not render him liable. The principle is expressed in the Restatement, 3 Torts § 653, comment g, as follows: "Where a private person gives to a prosecuting officer information which he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief therein was one which a reasonable man would not entertain." The above comment is cited with approval in *Zenik* v. *O'Brien,* supra, 596, which recognized an immunity in favor of an individual who merely gives information to the police but does nothing more to initiate criminal proceedings.

In *Goodrich* v. *Warner,* 21 Conn. 432, 436 (1852), the court noted that if an informant fairly and

honestly lays before arresting authorities his belief of the commission of a crime and has no other connection with the prosecution, he is not liable.

In *Hemmerle* v. *K-Mart Discount Stores,* 383 F. Sup. 303 (D. S.C.), the facts were very similar to the present case. In that case a pharmacist became suspicious of a prescription for a controlled drug issued by an out of town physician and informed the police of the possibility that the plaintiffs, who sought to use the prescription, were about to commit a crime. The plaintiffs were detained and subsequently sued pharmacist's drugstore. The physician had in fact issued the prescription for the plaintiffs and it was not a forgery. The court held that the pharmacist not only had the right but a public duty to report suspicious circumstances concerning drugs to proper authorities and directed a verdict in favor of the defendant.

In *Gogue* v. *MacDonald,* 35 Cal. 2d 482, a cause of action was held not to be stated and accordingly a demurrer was sustained to a complaint which alleged that the defendant had reported in good faith to an appropriate public official facts leading to the plaintiff being mistakenly arrested. See also *Newton* v. *Spence,* 20 Md. App. 126, 136.

The rule exonerating an honest informer rests on the premise that either (1) there is no duty of reasonable care owed to the person informed against and as a consequence there is no negligence on which the informer can be held liable, or (2) there is a privilege or immunity granted to the informer in performing his public responsibility. See Prosser, Law of Torts (4th Ed.) § 17, p. 100. On either premise, the rule derives from sound public policy that the efficient enforcement of criminal law requires that a private person who renders aid to the police by giving honest, even if mistaken, infor-

mation about crime should be given effective protection. *Hemmerle* v. *K-Mart Discount Stores,* supra, 307; Restatement, 3 Torts, p. 380.

To allow an action in negligence to lie against a citizen if he makes an honest mistake in reporting to the police would have a chilling effect on an important source of information about crime. Citizen cooperation is essential to efficient police operation and should not be stifled.

No cases have been cited by the plaintiff which require, and none of the legal commentaries and authorities point to, the expansion of negligence liability to the facts of this case. This court concludes it would be both unwarranted and unwise.

From the foregoing, the plaintiff has also failed, as a matter of law, to establish a cause of action against the defendant on the second count in negligence.

This case has been pending in the courts since August, 1970. The plaintiff has been given the fullest opportunity to plead her cause and to prove her case. The court concludes that under the law she has no case. No purpose would be served in allowing her a new trial.

The jury verdict on both counts is set aside, and the court orders, pursuant to § 255 of the Practice Book, that, notwithstanding the verdict, judgment be entered in favor of the defendant.